UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| SYLVIA KUGELMAN, individually and on behalf of all others similarly situated, | CASE NO. 1: 13 CV 1606 |
| Plaintiff, | JUDGE PATRICIA A. GAUGHAN |
| vs. | |
| PVF CAPITAL CORP.; STEVEN A. CALABRESE; FREDERICK D. DISANTO; UMBERTO P. FEDELI; MARK D. GROSSI; RICHARD R. HOLLINGTON, III; ROBERT J. KING, JR.; STUART D. NEIDUS; and F.N.B. CORPORATION, | Memorandum of Opinion and Order |
| Defendants. | |

**INTRODUCTION**

This matter is before the Court on defendants PVF Capital Corporation, Steven A. Calabrese, Frederick D. DiSanto, Umberto P. Fedeli, Mark D. Grossi, Richard R. Hollington, III, Robert J. King, Jr., and Stuart D. Neidus's Motion to Dismiss Plaintiff's Amended Complaint (Doc. 5) and defendant F.N.B. Corporation's Motion to Dismiss Plaintiff's Amended Complaint (Doc. 9). This is a securities fraud class action. For the reasons that follow, the motions are GRANTED.

**FACTS**

Plaintiff, Sylvia Kugelman, brings this action on behalf of herself, and all other similarly situated individuals, against defendant PVF Capital Corporation (PVFC), individual defendants Steven A. Calabrese, Frederick D. DiSanto, Umberto P. Fedeli, Mark D. Grossi, Richard R. Hollington, III, Robert J. King, Jr., and Stuart D. Neidus (collectively "director defendants") who serve on PVFC's board of directors, and defendant F.N.B. Corporation (FNB).  This case arises out of the proposed merger of defendants PVFC and FNB.

The following facts are alleged in plaintiff's Amended Class Action Complaint. FNB is a large financial services company headquartered in Pennsylvania. Its main subsidiary, First National Bank of Pennsylvania, operates in six states and has total assets of $12.4 billion. PVFC is an Ohio-based corporation whose business consists primarily of the operations of Park View Federal Savings Bank (Park View Federal), which operates 16 locations throughout the Greater Cleveland area. Individual defendants Steven A. Calabrese, Frederick D. DiSanto, Umberto P. Fedeli, Mark D. Grossi, Richard R. Hollington, III, Robert J. King, Jr., and Stuart D. Neidus are all directors of PVFC. Defendant King is the president and CEO of PVFC and of Park View Federal. The rest of the board members are all outside, independent directors.

Park View Federal, an Ohio charted savings and loan association, has been in operation since 1920. Its principle business consists of attracting deposits from the general public and investing these funds primarily in loans secured by first mortgages on real estate, as well as other commercial and consumer loans in northern Ohio. On October 19, 2009, PFVC and Park View Federal entered into two consent orders with the Office of Thrift

Supervision (OTS), the government entity that then regulated certain financial institutions. The OTS's orders restricted PFVC and Park View Federal from undertaking certain business activities and required Park View Federal to raise more capital because of alleged bad practices tied to the financial crisis.

In the two year period surrounding the entry of the consent orders, the board of PVFC was fundamentally reconstituted. Six of the seven current board members of PVFC have joined the board since the end of 2008.[1] In the latter half of 2009, the board of PVFC hired defendant King, the board's sole inside director, to serve as PVFC's president and chief executive officer. By all accounts, the new board and management of PVFC have transformed the business during their tenure. Park View Federal was released from its consent order on August 27, 2012 and PVFC was released December 15, 2012.

In July 2012, shortly before Park View Federal was released from its consent order, the board began to contemplate a potential sale of the company. To familiarize itself with PVFC's value, the board instructed Sandler O'Neill, its financial advisor, to contact FNB based on a previous relationship between PVFC and FNB. For the next several months, PVFC engaged in negotiations with FNB, providing FNB with access to non-public information. However, in October 2012, FNB indicated to PVFC that it would be unable to proceed with any acquisition of PVFC because of a lack of current financial statements in a portion of Park View Federal's loan portfolio.

Over the next two months, PVFC retained a company to assist in reviewing its financial statements and updating credit reviews on all loan files. In November 2012, the

---

[1] Defendant Neidus has served on the board of PVFC since 1996.

3

board asked defendant King to contact FNB to see if it would be interested in a potential deal. In December 2012, Bank B contacted defendant King and expressed an unsolicited "indication of interest" to acquire PVFC. The board subsequently decided to allow Bank B and FNB to conduct due diligence. In late January, Bank B submitted an indication of interest worth $4.00 per share, and FNB submitted an indication of interest worth $3.65 per share, both of which were all-stock transactions.

On February 19, 2013, PVFC and FNB announced that they had entered into a merger agreement in which FNB agreed to acquire all of the outstanding shares of PVFC in an all-stock transaction worth approximately $106 million (the "Proposed Acquisition"). Following the merger, PVFC shareholders will own roughly 6% of the combined entity. Based on FNB's average stock price for the 20-day period leading up to the execution of the merger agreement, FNB's acquisition is worth approximately $3.97 per share to PVFC shareholders.

On July 31, 2013, PVFC and FNB filed a Schedule 14A proxy statement (Proxy Statement), which served as a prospectus for FNB's prospective issuance of stock to PVFC shareholders on the completion of the Proposed Acquisition, with the Securities and Exchange Commission (SEC). Approaching four hundred pages in length, the Proxy Statement contained the board of PVFC's recommendation that shareholders vote "For" the Proposed Acquisition, which is contingent upon the approval of a majority of the outstanding shares of PVFC's common stock, at a shareholder vote that is to take place on September 25, 2013.

Thereafter, plaintiff filed this lawsuit seeking to prevent the merger. The complaint contains four claims for relief. Count one is a claim against all defendants for violation of

Section 14(a) of the Exchange Act in connection with the filing of the Proxy Statement, which plaintiff alleges contains material misrepresentations and omissions. Count two alleges a claim against the director defendants for the alleged material misrepresentations and omissions as controlling persons under Section 20(a) of the Exchange Act. Count three alleges that director defendants breached their fiduciary duties under Ohio law for the alleged "materially inadequate disclosures and material disclosure omissions" in the Proxy Statement. (Am. Complt., ¶ 141.) Count four alleges that director defendants "have breached their fiduciary duties of loyalty, good faith, and independence owed to the shareholders" of PVFC.[2]

Plaintiff seeks declaratory and injunctive relief, including: (i) enjoining, preliminarily and permanently, FNB's acquisition of PVFC; (ii) *rescission* of the acquisition or awarding *rescissionary* damages if the transaction is consummated before the Court's judgment is entered; (iii) an accounting by defendants for all damages caused them and any profits and special benefits obtained as a result of their breach of fiduciary duties; and (iv) awarding plaintiff the costs of this action, including attorneys' fees.

All defendants move for an order dismissing plaintiff's Amended Complaint. Plaintiff opposes the motion.

**STANDARD OF REVIEW**

A motion to dismiss under Fed. R. Civ. P. 12(b)(6) tests the sufficiency of a complaint.  In order to survive a motion to dismiss, a complaint's factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true.  *Ass'n of Cleveland Firefighters v. City of Cleveland, Ohio*,

---

[2] Plaintiff's counsel mistakenly identifies the name of PVFC as "Flatbush" here in the Amended Complaint. (Am. Complt., ¶ 147.)

502 F.3d 545, 548 (6th Cir. 2007) (quoting *Bell Atlantic v. Twombly*, 550 U.S. 544, 555 (2007)).  The complaint must contain sufficient factual material to state a claim "plausible on its face." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

Fed. R. Civ. P. 9(b) requires that a party pleading fraud must state the circumstances constituting fraud with "particularity."  Furthermore, the Private Securities Litigation Reform Act of 1995, (PSLRA), applicable to private actions asserting violations of securities laws, also imposes specific pleading requirements.  Under the PSLRA, a complaint must "specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed."  15 U.S.C. § 78u-4(b)(1).  The PSLRA provides in pertinent part:

> In any private action arising under this chapter in which the plaintiff alleges that the defendant--
>
> (A) made an untrue statement of a material fact; or
>
> (B) omitted to state a material fact necessary in order to make the statements made, in the light of the circumstances in which they were made, not misleading;

> the complaint shall specify each statement alleged to have been
> misleading, the reason or reasons why the statement is
> misleading, and, if an allegation regarding the statement or
> omission is made on information and belief, the complaint shall
> state with particularity all facts on which that belief is formed.

*Id.*

In determining a motion to dismiss, the Court may consider matters of public record, including "securities filings made with the SEC." *See, e.g., Monday v. Meyer*, Case No. 10 CV 1838, 2011 WL 5974664, at *2 (N.D. Ohio Nov. 29, 2011).

## **DISCUSSION**

1. Count One—Section 14(a)

Plaintiff alleges that defendants have violated Section 14(a) of the Exchange Act by omitting certain material information from the Proxy Statement. The omissions plaintiff identifies fall into four categories: (1) PVFC's financial projections; (2) Sandler O'Neill's bases for selecting specific methodologies and inputs used in the fairness opinion which is included in the Proxy Statement; (3) information concerning the process leading up to the execution of the merger agreement; and (4) conflict of interest information.

> Section 14(a) of the Exchange Act provides:
>
> > It shall be unlawful for any person . . . in contravention of such
> > rules and regulations as the Commission may prescribe . . . to
> > solicit or to permit the use of his name to solicit any proxy or
> > consent or authorization in respect of any security.

15 U.S.C. § 78n(a)(1).

The SEC's implementing regulation at issue in plaintiff's complaint is SEC Rule 14a-9, which provides:

7

> No solicitation subject to this regulation shall be made by means of any proxy statement . . . containing any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading.

17 C.F.R. § 240.14a-9(a).

Defendants contend that plaintiff's Amended Complaint fails to allege an actionable violation of Section 14(a) and Rule 14a-9 as a matter of law and should be dismissed. Defendants point out that plaintiff's disclosure claims are based solely on alleged "omissions" of material information from the Proxy Statement, and that plaintiff does not allege that any specific statement in the Proxy Statement is actually false.

An "[o]mission of information from a proxy statement will violate Section 14(a) and Rule 14a-9 only if either the SEC regulations specifically require disclosure of the omitted information in a proxy statement, or the omission makes other statements in the proxy statement materially false or misleading." *Local 295/Local 851 IBT Emp'r Group v. Fifth Third Bancorp*, 731 F. Supp.2d 689, 716 (S.D. Ohio 2010). *See also Seinfeld v. Becherer*, 461 F.3d 365, 369-70 (3d Cir. 2006).

Defendants argue that neither circumstance is presented in plaintiff's Amended Complaint. Defendants contend that the complaint fails to point to any SEC rule requiring the disclosure of the omissions identified by the plaintiff. Likewise, defendants argue that "the Amended Complaint does not even conclusorily allege, much less plead with specificity, that any specific statement in the Proxy Statement is rendered misleading as a result of any of these alleged omissions." (Doc. 5 at 11.) Finally, defendants argue that the alleged omissions

are insufficient to support a claim under Section 14(a) because some of the information is either actually disclosed in the Proxy Statement[3] or is immaterial as a matter of law.

In her opposition brief, plaintiff argues that she adequately stated a claim under Section 14(a) and Rule 14a-9 with regard to each of the four categories of omissions she identifies. With regard to the first category, the omission of certain financial projections for PVFC from the Proxy Statement, plaintiff argues that the Proxy Statement violates Rule 14a-9 if it contains any statement or representation that, "at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." (Doc. 22. at 7 )(citing17 C.F.R. §240.14a-9(a) (2012).)

Regarding the second category of alleged omissions in Sandler O'Neill's fairness opinion, plaintiff recites a desire to know the bases by which the financial advisor selected certain methodologies and inputs used in the analyses of the merger. For instance, plaintiff alleges that the Proxy Statement is "deficient and should disclose additional material information, including the basis for using price to LTM earnings multiples of 8.0x to 18.0x and multiples of tangible book value of 50% to 175% to calculate terminal values for PVF[.]" (*Id.* at 10-11.) The absence of these disclosures, plaintiff alleges, are material omissions because "to make an informed decision, shareholders need certain financial information including a fair summary of a financial advisor's analyses." (*Id.* at 9.)

---

[3] Defendants have alleged several instances where the alleged omitted information from the Proxy Statement is present. (Doc. 5 Ex. V). For instance, plaintiff alleges: "[T]he Proxy Statement fails to disclose . . .[w]hy the Board (or Sandler O'Neill) decided to contact Bank B to gauge its interest in a potential transaction[.]" (Am. Complt., ¶ 105(g).) Defendants point to page 39 of the Proxy Statement which says: "On December 17, 2012, a financial institution ("Bank B") met with Robert King and expressed **an unsolicited indication of interest to acquire PVF Capital** in a stock for stock transaction at a price range of $3.25 to $3.75 per PVF Capital common share." (Doc. 5 Ex. A at 52.)

Turning to the third category, the alleged omissions relating to the process leading up to the merger agreement, plaintiff argues shareholders are entitled to "an accurate, full, and fair characterization of those historic events." (*Id.* at 11.) Plaintiff then goes on to identify six specific steps in the merger process about which plaintiff would like further details. (*Id.* at 12 ("In particular, the Proxy fails to disclose: … The dollar value of Bank B's indication of interest as of the date the Board decided to enter into the Merger Agreement).) Plaintiff further asserts that "[t]his information is material because it discloses to the Company's shareholders whether or not the Merger is, in fact, the result of a process designed to secure the highest price possible for PVF and its shareholders." (*Id.* at 12.)

Finally, as to the fourth category of alleged omissions regarding conflicts of interest by the board and management, plaintiff notes that shareholders are entitled to know about potential conflicts of interest. Plaintiff again recites several alleged deficiencies in the Proxy Statement regarding the timing and terms of the alleged conflicts. Plaintiff then states: "It is necessary for PVF shareholders to be provided with this information concerning the financial interests of the Company's fiduciaries in order for shareholders to assess the credibility of the Board's recommendation and to evaluate whether the Merger is, in fact, the result of a sound, arm's-length process." (*Id.* at 13.)

Upon review, the Court finds that plaintiff fails to meet the pleading requirements set forth in the PSLRA because she fails to plead which *specific* statements in the Proxy Statement are rendered misleading by defendants' omissions.

This Court decided a case with a strikingly similar factual background to the one presented here. In *Louisiana Municipal Police Employers Retirement System v. Cooper*

10

*Industries*, this Court considered plaintiffs' objections to a proposed merger. No. 12 CV 1750, 2012 U.S. Dist. LEXIS 148542 (N.D. Ohio Oct. 16, 2012). Plaintiffs sued the board of Cooper and its merger partner, Eaton Corporation, to stop the merger, objecting to alleged "draconian deal protection devices to preclude any competing bids for [Cooper]" in the merger agreement, as well as to the adequacy of the consideration being offered to the shareholders of Cooper. As here, plaintiffs' substantive allegations were violations of Sections 14(a) and 20(a) of the Exchange Act in connection with the filing of Schedule 14a proxy/prospectus.

In *Cooper*, plaintiffs identified two categories of information omitted from the proxy which they alleged made it misleading: (1) information relating to the background of the transaction and (2) information related to the financial advisor's analyses. *Id.* at *6-10. This Court held that the complaint failed to state a claim under Section 14(a) and granted defendants' motion to dismiss. "To the extent plaintiffs contend it is enough for a plaintiff simply to allege that material information was omitted from a proxy statement in order to state a claim under §14(a), plaintiffs are incorrect. Rather, as defendants point out, federal courts have held that in order to sufficiently allege the elements of [an omission] claim under §14(a) and Rule 14a-9, plaintiff must identify a precise "statement" in a proxy that is either affirmatively misleading or that is rendered misleading by the operation of a materially omitted fact." *Id.* at *28.

Here, plaintiff makes no argument that any of information she identified as omitted from the Proxy Statement was required to be disclosed by an SEC regulation. Plaintiff's sole basis for a violation for securities law rests on a claim that the omissions render specific

11

statements in the Proxy Statement misleading.

As in *Cooper*, however, plaintiff's Amended Complaint fails to identify any specific statement. Plaintiff's Opposition Brief makes no attempt to distinguish this case from *Cooper* or to address her failure to identify any specific statements as required under the pleading requirements of the PSLRA. Rather, plaintiff's Amended Complaint points to broad swaths of the Proxy Statement, if to any at all, that plaintiff alleges are made misleading as a result of the omissions identified by plaintiff. For example, plaintiff's Amended Complaint alleges: "With respect to Sandler O'Neill's "Comparable Company Analysis" for PVF Capital and FNB, the Registration Statement is deficient and should disclose the following[.]" (Am. Complt., at ¶ 101). It then recites a request to have the bases by which Sandler O'Neill selected certain inputs in the fairness opinion disclosed to PVFC shareholders in the Proxy Statement. However, plaintiff fails to plead that the absence of the disclosure of these bases in any way renders specific parts of the fairness opinion, or even the fairness opinion in its entirety, misleading to PVFC's shareholders. With regard to the alleged omissions pertaining to the process of the merger, plaintiff alleges several deficiencies in the chronology of the merger, (Am. Complt., at ¶ 104-106), without even laying out the page numbers of where in the Proxy Statement that chronology is detailed.[4]

Indeed, the majority of plaintiff's complaint does not allege that the omissions rendered even broad sections of the Proxy Statement misleading. Rather, much of plaintiff's complaint alleges that these omissions are necessary to allow the shareholders of PVFC to assess the quality of the information provided in the Proxy Statement. (*See e.g.,* Am. Complt.,

---

[4] This information is found in the Proxy Statement on pages 37-41. (Doc. 5 Ex. A pgs. 50-54.)

¶ 100 ("However, the Proxy Statement inadequately discloses the underlying methodologies, key inputs, and multiples relied upon and observed by Sandler O'Neill, thereby preventing PVF Capital's shareholders from adequately and on an informed basis evaluating and understanding Sandler O'Neill's financial analyses and, thus, the resulting fairness opinion.").) However, as this Court stated in *Cooper*, "even though a plaintiff "might want more information," a plaintiff is only entitled to the information required by Rule 14a-9." *Cooper*, at *35 (citation omitted).

Given that plaintiff fails to point to any specific statement rendered misleading by the omission of the information she identifies, the Court finds that plaintiff fails to plead sufficient facts to show a plausible violation of the Section 14(a) or Rule 14a-9.[5]

2. Count Two—Section 20(a)

Section 20(a) of the Exchange Act imposes joint and several liability on any "person who, directly or indirectly, controls any person liable" for securities fraud under the Exchange Act, "unless the controlling person acted in good faith and did not directly or indirectly induce" the violation. 15 U.S.C. § 78t(a). "In order to prove a *prima facie* case under section 20(a), a plaintiff must prove a primary violation of federal securities laws and that the targeted defendants . . . exercised actual power or control over the primary violator." *In re Keithley Instruments, Inc. Sec. Litig.*, 268 F. Supp. 2d 887, 906 (N.D. Ohio 2002).

The Court also grants defendants' motion to dismiss count two, alleging a claim against the individual defendants under Section 20(a) of the Exchange Act. Given that plaintiff fails to state a cause of action against director defendants under Section 14(a) of the

---

[5] Given this holding, the Court does not address the defendants' arguments that the information plaintiff alleges is omitted is disclosed in the Proxy Statement or is immaterial as a matter of law.

Exchange Act and SEC Rule 14a-9 for the reasons discussed above, there is no primary violation on which a Section 20(a) claim can be premised. Accordingly, the Section 20(a) claim is subject to dismissal as well.

3. Counts Three and Four—Breach of Fiduciary Duties Under Ohio Law

Having found that the federal claims are subject to dismissal, the Court declines to exercise supplemental jurisdiction over plaintiff's state law claims (breach of fiduciary duty). *See* 28 U.S.C. § 1367(c)(3); *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966) ("Certainly, if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well.").

**CONCLUSION**

For the reasons set forth above, the Court GRANTS defendants' motions to dismiss. Plaintiff fails to state a plausible federal claim for relief under the Exchange Act, and the Court declines to exercise supplemental jurisdiction over plaintiff's remaining state law claim under 28 U.S.C. §1367(c).

IT IS SO ORDERED.

/s/ Patricia A.Gaughan
PATRICIA A. GAUGHAN
United States District Judge

Dated: 9/9/13